In re NEWMAN.

(Supreme Court, Appellate Division, First Department.   April 14, 1916.)

1. ATTORNEY AND CLIENT ☞39—SUSPENSION—GROUNDS.

Penal Law (Consol. Laws, c. 40) § 274, prohibiting attorneys from promising or giving a layman a valuable consideration for procuring business, is violated by a practice by an attorney of paying to a collection agency sending him business a proportion of the fees charged thereon.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 52; Dec. Dig. ☞39.]

2. ATTORNEY AND CLIENT ☞63—RELATION—ESTOPPEL TO DENY.

An attorney of record may not deny that the relation of attorney and client exists between himself and one for whom he appears and conducts litigation.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 85, 87; Dec. Dig. ☞63.]

3. ATTORNEY AND CLIENT ☞58—SUSPENSION ON—PROCEEDINGS—PUNISHMENT.

An attorney, 26 years of age, 2 years in practice, offending against Penal Law, § 274, as to fee-splitting, held sufficiently disciplined, in view of his youth and inexperience, by censure and warning.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 76–78; Dec. Dig. ☞58.]

Proceeding for discipline of Julius A. Newman.   Respondent censured.

Argued before CLARKE, P. J., and SCOTT, DOWLING, SMITH, and PAGE, JJ.

Mason Trowbridge, of New York City (Samuel Owen Edmonds, of New York City, of counsel), for petitioner.

Harry Crone, of New York City, for respondent.

Julius Henry Cohen, of New York City, amicus curiæ.

CLARKE, P. J.   This is a proceeding for the discipline of an attorney, instituted by the New York County Lawyers' Association.   No reference has been had; the parties submitting upon the petition, answer, and stipulated exhibits.

The respondent was admitted to the bar in October, 1910, and has ever since been and is now engaged in the practice of law in the borough of Manhattan.   The specifications of the charges are as follows:

First. That shortly prior to the 1st day of April, 1913, the said Julius A. Newman, in violation of section 274 of the Penal Law of the State of New York, entered into an unlawful agreement with one David L. Ostro, who is not an attorney at law, wherein and whereby the said David L. Ostro agreed that he would endeavor to procure the said Julius A. Newman to be employed as attorney to bring actions at law for the recovery of moneys for such clients as the said David L. Ostro might thereafter be able to induce from time to time so to employ the said Julius A. Newman, and the said Julius A. Newman in consideration thereof agreed that he would pay over to the said David L. Ostro one-half of any fees which he might receive for any such services. That the said agreement was carried into effect and continued up to about June 17, 1914.

Second. That thereafter, and pursuant to said unlawful agreement, and prior to April 8, 1913, the said David L. Ostro caused and procured one William

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Garretson to retain the said Julius A. Newman to bring an action against one Sylvia De Beck to recover the sum of seventy-eight dollars ($78); that the said Newman thereupon commenced and prosecuted the said action, and procured judgment therein, and collected certain sums and paid over to the said David L. Ostro one-half of the fee received by the said Julius A. Newman for his said services; that is to say, paid over to the said David L. Ostro twenty-five dollars and thirty-four cents ($25.34) in consideration of the said David L. Ostro having so induced the said William Garretson to so retain the said Julius A. Newman.

The third specification sets forth another specific instance.

The answer denies that the respondent entered into the unlawful agreement set forth in the first specification, but, on the contrary, alleges: That the said David L. Ostro, who conducted a collection agency under the name and title of Ostro-Simon Company at 198 Broadway, New York City, which was known and held itself out as collection specialists, making collections in New York City and in all other parts of the world, proposed to the respondent that respondent take care of the claims of the Ostro-Simon Company that required the institution of legal proceedings. That at all times the said Ostro-Simon Company was the client with whom respondent directly negotiated. That upon its business card was the following statement:

"Collection Rates.

"A 10% fee on all claims, before suit, regardless of age of claim. Minimum fee of $3.00 on all claims less than $30.

"A 20% fee and minimum disbursements on all claims, where suit must be brought. Minimum fee of $5.00 on all claims less than $30.00. Out of town claims according to prevailing bar rates.

"We furnish a monthly report on all claims in our hands."

That on or before the 1st of April, 1913, Ostro, who was conducting the aforementioned collection agency under the name of Ostro-Simon Company, came to your respondent and stated that he would like to employ him for the purpose of prosecuting such claims as the Ostro-Simon Company of itself could not successfully contest, because of the fact that it was prohibited by statute engaging in the practice of law. · The course of the business dealing with the Ostro-Simon Company and the respondent has been that the respondent dealt and negotiated directly with the Ostro-Simon Company, and never came into personal contact with, nor ever saw or had any conversations with, or other communications with, the clients or patrons of the Ostro-Simon Company.

In the collection of a claim, the usual method was for the Ostro-Simon Company to send a letter to respondent of which the following is typical:

"Telephone 4143 Cortlandt

"Ostro-Simon Collection Specialists.

"Collections made in all parts of the world.

"198 Broadway, New York, January 3, 1914.

"Julius A. Newman, Esq., 203 Broadway, New York City—Dear Sir: Inclosed herewith you will find complaint verified in the matter of Hyatt v. Geiger, together with a letter received from Geiger at his new address. This claim is given to you on a 10% basis, and if collected we are to receive

one-half of 10% from you. This is for bringing suit, and as far as taking judgment. After that, if necessary, different arrangements will be made with our client for examination of debtor in supplementary proceedings.

"You will also find inclosed a check for $3.00 for issuing, serving, and filing of summons. Kindly send summons over to be served by the Ostro Detective Bureau.

"Very truly yours,                    Ostro-Simon Company."

The usual cost when a claim came into the Ostro-Simon Company for collection was that the fee charged for collections was as announced on the card, the statement of which is above set forth, and the practice that existed between the Ostro-Simon Company and the respondent was that, in the event of litigation, the Ostro-Simon Company charged its patrons 20 per cent., of which the Ostro-Simon Company authorized the respondent to retain 10 per cent. for his legal services rendered in the collection of the claim. The respondent alleges that this practice is not in contravention of section 274 of the Penal Law of the state of New York, and that it is not improper, nor does it constitute malpractice of the law.

Respondent further alleges that he never directly bought any claim from the said Ostro-Simon Company, nor did he ever, either before or after any action was brought or given, promise or give, or promise to give, to the said Ostro-Simon Company any consideration as an inducement to secure any demand of any kind to the said Ostro-Simon Company for the purpose of bringing action thereon. He further alleges that he never induced the said Ostro to send him claims of any kind whatsoever.

Respondent denies all the allegations contained in the second specification, and, on the contrary, alleges that he did not induce the said Ostro to procure the said Garretson for the purpose of bringing the aforementioned action. He admits, however, that he commenced an action in behalf of the said Garretson against the aforementioned De Beck, and recovered judgment thereon, and paid over to the said Ostro-Simon Company the sum of $25.34, but denies that he paid this sum of money in consideration of the said David L. Ostro having so induced the said William Garretson to retain the respondent.

Respondent says that he has been merely carrying out the usual practice obtaining in the collection business as he has from time to time seen the same practiced in the commercial world, and has not felt that he was, at any time, guilty of any wrongdoing. The wrongs that respondent may be guilty of are due more to inexperience on his part and to his youth and ignorance of business methods, rather than to any criminal intent on his part, or wish to do anything improper or unprofessional.

Respondent submits that there is no necessity to submit this proceeding to the official referee, but that he is willing to have this court render its decision upon the petition and answer, and in view of his youth and inexperience of the practice of his profession trusts that, inasmuch as this proceeding is one of first impression, the court take such matter into consideration in determining whether or not, as a matter of fact, he has been guilty of the practices with which he is charged.

[1] Section 274 of the Penal Law provides as follows:

*"Buying demands on which to bring an action.* An attorney or counselor shall not:

"1. Directly or indirectly, buy, or be in any manner interested in buying, a bond, promissory note, bill of exchange, book debt, or any other thing in action, with the intent and for the purpose of bringing an action thereon.

"2. By himself, or by or in the name of another person, either before or after action brought, promise or give, or procure to be promised or given, a valuable consideration to any person, as an inducement to placing, or in consideration of having placed, in his hands, or in the hands of another person, a demand of any kind, for the purpose of bringing an action thereon, or of representing the claimant in the pursuit of any civil remedy for the recovery thereof. But this subdivision does not apply to an agreement between attorneys and counselors, or either, to divide between themselves the compensation to be received.

"3. An attorney or counselor convicted of a violation of any of the provisions of this section, in addition to the punishment by fine and imprisonment prescribed therefor by this section, forfeits his office.

"4. An attorney or counselor who violates either of the first two subdivisions of this section is guilty of a misdemeanor; and, on conviction thereof, shall be punished accordingly, and must be removed from office by the Supreme Court."

The respondent claims that he did not seek out the Ostro-Simon Company, but that the arrangement was suggested to him by David L. Ostro, the moving spirit of said company and that as neither a corporation nor an individual under the guise of a corporate name is permitted to practice the profession of law it was necessary for the company to retain the services of an attorney for that purpose, and that it did retain him, and that he merely received as his fee for the prosecution of the suits one-half of the fee regularly charged by said company to its patrons. In other words the charge is that the respondent entered into an unlawful agreement by which he agreed to pay one-half of the fees which he would receive for any services performed for individuals which Ostro should procure to employ him as attorney.

The answer is that he was employed solely as the attorney for the collection agency, which agreed to allow him for his services one-half of the fees which the agency charged its customers. Incidentally thereto the respondent claims that the arrangement was brought about at the instigation of the controlling manager or owner of the agency, and that the respondent never had any personal relations with the customers of said agency; that they were not his clients, but that his only client was said agency. The difficulty is that in the court proceedings which he instituted he did appear as attorney of record for the individuals who owned the claims, and as such attorney he prosecuted, not the claims of the agency, but of the individuals, and, as such attorney, he recovered and collected judgments, including costs. So far as the court proceedings were concerned, he was the attorney for the plaintiffs in the action which he instituted and prosecuted, and they were his clients. If he had failed to account for and turn over the moneys so collected by him as attorney as the result of litigation, there can be no doubt that he would have been personally responsible to them, a responsibility which they could have enforced

by summary proceedings, and for such misconduct upon his part in his relation of attorney to them he would have been amenable to disciplinary proceedings by this court. The fact of his appearing as attorney of record in litigated proceedings established by record evidence of the highest character the relation of attorney and client. From the amounts so collected by him he retained 20 per cent. as remuneration for services rendered in collecting the claim as the result of litigation, and of this he agreed to pay 10 per cent. to the collection agency. What was this? Was it a payment by him of a proportion of his fee taken from his client's money, collected by him, to the person or agency procuring the client for him, or, was the 10 per cent. which he retained compensation paid to him by the collecting agency, who, he claims, was his real client for services rendered to it. Whatever way we look at it, it is clear that there was a splitting of the fees between an attorney and the person or party not an attorney, and not competent to practice law, for legal services rendered to a third person, whose attorney of record he was, and with whom the relation of attorney and client legally existed.

The collection agency clearly held itself out as engaged in collecting claims by suit if necessary. Its circular said:

"A 10 per cent. fee on all claims, before suit; * * * a 20 per cent. fee and minimum disbursements on all claims, *where suit must be brought.*"

Also:

"Terms for Suit.

On any sum up to $1,000........................................10%
On any sum over $1,000........................................ 5%
Minimum fee...................................................$5.00

"In case of suit, plaintiff is to pay all court costs in advance, in any event, but no fee shall be due the attorney except out of a recovery, unless the claim is contested, and there is extra labor justifying the extra charge. Such must be named and agreed upon. If defendant is to be examined in supplementary proceedings, an extra fee is also charged. No suit is commenced unless authority is given."

In its letter to respondent it inclosed a complaint verified, not by it as plaintiff, but by its customer:

"This claim is given to you on a 10 per cent. basis, and if collected we are to receive one-half of 10 per cent. from you. This is for bringing suit, and as far as taking judgment. After that, if necessary, different arrangements will be made with our client for examination of debtor in supplementary proceedings."

In another letter, inclosing two verified complaints, it said:

"It is understood that this claim is taken on a 10 per cent. basis, with the usual division between offices."

The respondent, therefore, did promise and give a valuable consideration to the agency as an inducement to placing, or in consideration of placing, in his hands a demand for the purpose of bringing an action thereon, as prohibited by section 274 of the Penal Law.

[2] We are clearly of the opinion that the relation was one which this court cannot sanction or approve. An attorney of record will not

be permitted to deny that the relation of attorney and client exists between himself and the person for whom he appears and conducts litigation. Nor can this court sanction the splitting of fees by an attorney with a layman or a corporation, or a voluntary association not authorized to practice law, as an inducement or reward for the procuring of business. Matter of Clark, 108 App. Div. 150, 95 N. Y. Supp. 388, affirmed 184 N. Y. 222, 77 N. E. 1; Matter of Shay, 133 App. Div. 547, 118 N. Y. Supp. 146, affirmed on opinion of Ingraham, J., 196 N. Y. 530, 89 N. E. 1112.

[3] As, however, the respondent at the time of the act complained of was a young man of about 26 years of age, only 2 years at the bar, with little or no experience, and as the proposition was brought to him by the agency, we think that the ends of justice will be sufficiently attained by this disapproval of the character of the relations existing between him and the collecting agency, and his censure for his participation therein, with a warning to those who may hereafter participate in like transactions. Settle order on notice. All concur.