OPINION OF THE COURT
Martin B. Stecher, J.
The plaintiff moves, following a jury trial in which a general verdict was rendered in favor of the defendants, to set aside the verdict, direct the entry of judgment in favor of the plaintiff on the issue of liability, or, alternatively, for a new *630 trial. The basis for the motion, principally, is claimed inconsistency between the general verdict and the jury’s answer to one of two interrogatories (CPLR 4111, subd [c]).
The plaintiff was the principal stockholder of several real estate corporations which experienced financial difficulties. It is alleged that these corporations were indebted to the defendant, Consolidated Edison Co., for utility services. The utility turned the matter over to the codefendant, Le Schack & Grodensky, Esq., P. C., for collection. Le Schack & Grodensky is engaged in the business of collecting delinquent accounts. Its proprietor is Maurice A. Grodensky, Esq., the only attorney associated with that firm. (It is my understanding that Mr. Le Schack is now deceased.) The remaining personnel of Le Schack & Grodensky are several score of nonlawyers who perform the various functions involved in bill collecting.
Le Schack & Grodensky, P. C., issued a complaint but no summons. The complaint designated the plaintiff, individually, as well as the corporations, as parties defendant for the allegedly unpaid utility bills. Although the complaint may have been served upon the plaintiff, it is clear that no summons was ever served. Le Schack & Grodensky, as attorneys for Consolidated Edison, nonetheless proceeded to enter a judgment and pursuant to that judgment served a restraining notice, depriving plaintiff of the use of his property. By subsequent adjudication it was determined that the court never had jurisdiction over Racoosin and that the judgment against him was void.
The complaint appeared to sound in various theories of action and at the end of the plaintiff’s case, on motion by the defendants, what appeared to be a cause of action for malicious prosecution was dismissed as the prior action had not terminated in a judgment for Mr. Racoosin on the merits (Heaney v Purdy, 29 NY2d 157; Levy’s Store v Endicott-Johnson Corp., 272 NY 155; Hauser v Bartow, 273 NY 370). What appeared to be a cause of action for abuse of process, the issuance of the attachment, was also dismissed because there was no showing that process, regularly issued, was intended to achieve any "collateral advantage or corresponding detriment to the plaintiff which is outside the legitimate ends of the process” (Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 398, 403; see, also, Dean v Kochendorfer, 237 NY 384). What appeared to be an action for prima facie tort was also dismissed; for the motive *631 in issuing the attachment was to collect a debt allegedly due. There was no demonstration that defendants maliciously sought to inflict economic damage on the plaintiff without economic or socially acceptable excuse or justification (Board of Educ. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, supra, at p 406).
What was left for the jury to determine was whether or not there had been a tortious interference by the defendant with the plaintiff’s property.
The only evidence against the defendant Consolidated Edison was the evidence of the fault or neglect of the codefendant, Grodensky, and the jury was instructed that no liability could attach to Consolidated Edison unless it was first established that the defendant law firm had committed an actionable tort. Consolidated Edison’s liability was vicarious only.
The jury was instructed that no liability could attach to the clearly wrongful act of Le Schack & Grodensky if that act was solely the result of negligence; it being the public policy of this State to encourage prospective litigants and their attorneys to have free access to the courts and to bring such actions which they, in good faith, believe themselves to have; that the public interest demands that attorneys, in the exercise of their proper function, shall not be civilly liable for their acts when those acts were performed in good faith for the honest purpose of protecting the interests of their clients. The jury was further instructed that an attorney "may be held liable to third parties only if he or she has been guilty of fraud or collusion or of a malicious or tortious act” (Gilford v Harley, 62 AD2d 5, 7; Hahn v Wylie, 54 AD2d 629) beyond mere negligence. On the other hand, the jury was told that if the defendant attorney "maliciously obtained a judgment against Mr. Racoosin without jurisdiction or maliciously issued a notice restraining Mr. Racoosin’s property” such act or acts could result in liability. Malice was described as going beyond personal aversion or hatred; that an act is deemed in law to be malicious when it is done with knowledge of the plaintiff’s rights and with the intention of interfering with those rights (Kent v City of Buffalo, 36 AD2d 85, 87, revd on other grounds 29 NY2d 818). The jury was told that if Grodensky, at the time the judgment was entered, knew that the court lacked jurisdiction or if he knew at the time the restraining notice was issued that the judgment was void for lack of jurisdiction and that he nonetheless issued the re *632 straining notice, such an act may be found by the jury to be malicious.
There was evidence that an attorney named Margolin, a subtenant in Grodensky’s office, performed certain services on behalf of Grodensky from time to time and that prior to entry of judgment and prior to the issuance of the restraining notice, the plaintiffs attorney spoke to Margolin and told him of the defect.
The jury was informed that if Margolin was a person authorized by Grodensky to receive such information and did in fact receive such information, then notice to Margolin was notice to Grodensky in which event the jury would be entitled to find that the entry of the judgment and the issuance of the restraining notice was malicious.
At the request of the attorneys for the defendants there were submitted to the jury, in addition to a request for a general verdict, two questions:
(1) "Did Maurice A. Grodensky have actual knowledge prior to June 17, 1974 [the date of service of the restraining notice] that Theodore R. Racoosin had not been served with a summons on May 9, 1974?”
(2) "Did any person in the office of Le Schack & Grodensky, P.C. with authority to receive such notice have actual notice prior to June 17, 1974 that Theodore R. Racoosin had not been served with a summons on May 9, 1974?”
The jury answered the first question in the negative, that is, that Grodensky lacked actual knowledge, but answered the second question in the affirmative, that is, that a person in his office with authority to receive such notice had received it prior to June 17, 1974.
Clearly, the answers to the two interrogatories were "consistent with each other.” (CPLR 4111, subd [c].) The question is whether the answer to the second interrogatory was inconsistent with the general verdict absolving the defendants of any liability for this admittedly willful interference with plaintiffs property. The defendant asserts that there was no inconsistency between the general verdict and the answer to the second interrogatory and offers two explanations for this position: The first is that the jury might have found that despite the receipt of knowledge, Grodensky was innocent of "malice.” In view of the charge, this argument lacks basis. Malice may be inferred from wrongfully interfering with *633 another’s property with knowledge that one has no right to do so. Such knowledge can be acquired vicariously.
The second argument is that the jury might have found that Grodensky was guilty of negligence only; that is, that although the information was in fact received by a person with authority to receive it, the failure to act upon that information was merely negligent. In all likelihood the jury did conclude that after receiving notice of the defect, Grodensky was also guilty of negligence in entering the judgment and issuing restraining notice thereon. In a semantic sense then, there was no inconsistency between the general verdict and the answer to the second question. As a matter of law, however, the verdicts are inconsistent and entitle the plaintiff to the relief sought on this motion.
Traditionally, any interference with the person or property of another by void or irregular process required the attorney issuing the process (Vernes v Phillips, 266 NY 298; Fischer v Langbein, 103 NY 84, 89; Bornstein v Silverman, 9 AD2d 363; Otto v Levy, 244 App Div 349) and the client who retained him (Guilleaume v Rowe, 94 NY 268; Poucher v Blanchard, 86 NY 256; Main Elec. Co. v Cohen, 72 Misc 30; Newberry v Lee, 3 Hill 523) to respond in damages; and the client was liable whether the attorney’s act was done " 'negligently, wantonly or * * * wilfully’ ” (Poucher v Blanchard, supra, p 260).
Inroads have been made upon this doctrine of absolute liability. Thus, for instance, in Schneider v Sachs Quality Stores (23 Misc 2d 4), the complaint against an attorney issuing similar process was sustained only because malice was alleged. In Chavez v Nevell Mgt. Co. (69 Misc 2d 718, 720-721), Justice (then Judge) Sandler declined "to extend to summary proceedings the principle of absolute liability for damage resulting from irregular process set forth in [Fischer v Langbein (103 NY 84, 89, supra)], which had traditionally been applied in cases involving attachments, executions and arrests * * * During the nineteenth century, a profound change in the law of torts gradually resulted in the body of law now familiar to us in which, as Prosser [Torts (3d ed)] put it succinctly (p. 30): 'With rare exceptions, actions for injuries to the person, or to tangible property, now require proof of an intent to inflict them, or of failure to exercise proper care.’ ” In the First Department, it was held (Hahn v Wylie, 54 AD2d, p 629) that "[t]he public interest * * * demands that attorneys, in the exercise of their proper functions as such, shall *634 not be civilly liable for their acts when performed in good faith and for the honest purpose of protecting the interests of their clients * * * An attorney may be personally liable to a third party who sustains an injury in consequence of his wrongful act or improper exercise of authority, where the attorney has been guilty of fraud or collusion, or of a malicious or tortious act”. The Appellate Division in the Third Department further limited an attorney’s liability when it said, "Without allegations of malicious intentions, this conduct [obtaining a default judgment to which the attorney was not entitled] does not give rise to liability” (Gifford v Harley, 62 AD2d, p 7).
No case, however, has gone so far as to exculpate a lawyer whose firm receives actual notice of the absence of jurisdiction and despite that notice, enters a void judgment and, thereafter, a void restraining notice. The jury’s answer to the second interrogatory was supported by evidence that the summons, which was a part of the judgment role, was typed and dated the very same day on which judgment was entered. The defendant Grodensky elected to be the sole attorney among 70 or 80 laymen, many of whom probably prepared papers for judgment without adequate professional supervision. The fact that these associates or employees did not understand the niceties of obtaining jurisdiction as a predicate for entering judgment and seizing or restraining other people’s property is no shield to this action. Once Grodensky, personally or by his authorized agent, received actual notice that jurisdiction had not been obtained he was under an absolute duty to refrain from entering judgment against the plaintiff and from interfering with the plaintiff’s property; for under such circumstances seizure was malicious (Kent v City of Buffalo, 36 AD2d 85, supra). That there may have been mere negligence in issuing the complaint without a summons is irrelevant once the actual notice of defect was received. Any negligent act or omission occurring subsequent to receipt of the notice of lack of jurisdiction cannot serve to relieve the defendant law firm of responsibility. As indicated above, once Consolidated Edison authorized Grodensky to collect this claim, it became liable for his tort under familiar principles of principal and agent; and it is no defense that it did not authorize the commission of a tort (Guilleaume v Rowe, supra; Poucher v Blanchard, supra; Main Elec. Co. v Cohen, supra; Newberry v Lee, supra).
Accordingly, the plaintiff’s motion is granted and the verdict *635 for the defendants is set aside. In its place, interlocutory judgment for liability only shall be entered against the defendant law firm, the defendant attorney, and its client Consolidated Edison Company of New York, Inc., for willful interference with the plaintiffs property. An order shall be settled consistent with the foregoing and directing the calendar clerk to assign this action for a jury trial on the issue of damage.